# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

**In Re**

MICHAEL and LAURA CALLAWAY,

**Debtors.**

**Bankruptcy Case No. 08-00311-JDP**

---

JEREMY J. GUGINO, Trustee,

**Plaintiff,**

vs.

CHARLES COBLE,

**Defendant.**

**Adv. Proceeding No. 08-6037**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Jeremy J. Gugino, Boise, Idaho, Chapter 7 Trustee, Plaintiff.

Richard L. Alban, Nampa, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

## Introduction

In this adversary proceeding, chapter 7[1] trustee, Jeremy J. Gugino ("Trustee"), seeks to recover a $5,000 lease payment made to Defendant Charles B. Coble ("Defendant") as a preference. Defendant argues that, as a matter of law under the undisputed facts, the target payment was not one made "for or on account of an antecedent debt" as required by § 547(b)(2). Accordingly Defendant moved to dismiss Trustee's complaint for failure to state a claim upon which relief could be granted. Adv. Docket No. 3.[2]

Trustee responded to the motion, attached the lease agreement as an exhibit to his response, and requested that the motion be treated as one for summary judgment. Adv. Docket No. 8. On August 13, 2008, the Court conducted a hearing at which Trustee and counsel for Defendant

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

[2] For convenience, pleadings and documents in the adversary proceeding are identified by "Adv. Docket No." and pleadings and documents in the underlying chapter 7 case are identified by "Bankr. Docket No.".

MEMORANDUM OF DECISION - 2

appeared. The parties stipulated as to the facts, which Trustee then read into the record. The parties then offered to submit the matter on the record.

After carefully reviewing the record before the Court and the applicable law, this Memorandum disposes of the issues.[3]

**Facts**

As noted above, the material facts are stipulated by the parties.

On January 4, 2008, Michael and Laura Callaway ("Debtors") entered into a residential lease agreement with Defendant whereby they agreed to rent the premises known as 6699 South San Bruno Avenue, in Boise. The lease agreement provided for a "MINIMUM LEASE TERM" of twelve months commencing on January 8, 2008 and expiring on January 8, 2009. Under the agreement, Debtors agreed to pay $1,000 each month over the entire minimum term of the lease. Payments were due on the first of each month. In addition, Debtors were required to make a $1,000 security

---

[3] To the extent required by the Rules, this Memorandum constitutes the Court's findings of fact and conclusions of law. *See* Rules 7052, 9014.
MEMORANDUM OF DECISION - 3

deposit prior to occupancy. Debtors gave Defendant $2,000 up front, comprising the January rental obligation and the security deposit.

In late January, 2008, Debtors filed their 2007 federal tax return, as well as their Idaho and Utah state tax returns. Soon thereafter, Debtors received tax refunds totaling approximately $6,181.[4] Debtors transferred $5,000 of those funds to Defendant to apply to future rent payments.[5] Then, on February 26, 2008, Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

The original schedules filed with Debtors' petition did not disclose that they held any interests in real property, nor did they indicate Debtors were parties to any executory contracts or unexpired leases. Bankr. Docket No. 1. In addition, Debtors' Statement of Financial Affairs does not disclose the $5,000 transfer to Defendant. *Id.* However, Trustee became

---

[4] Debtors did not receive any Earned Income Credit as part of their federal tax refund.

[5] The lease provided for payments to be made in the exact amount due. However, amounts tendered in excess of the amount due were to be credited to the following month's rent. *See* Adv. Docket No. 8, Attachment A.

MEMORANDUM OF DECISION - 4

aware of the transfer during Debtors' § 341(a) meeting of creditors.  On April 6, 2008, Debtors amended their schedules to reflect their leasehold interest and to claim the $5,000 advance rental payment exempt under Idaho's homestead exemption.  Bankr. Docket No. 16.  Trustee initially objected to the exemption claim, but later withdrew his objection.  Bankr. Docket Nos. 17, 23.[6]

## Discussion

### I.

If matters outside the pleadings are submitted to and not excluded by the Court, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 12(d), incorporated by Rule 7012(b); *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995);

---

[6] The Court can only speculate about Trustee's decision to forego his challenge to this exemption claim.  Perhaps it is because the rent payment was voluntary.  *See* § 522(g)(1) (providing that a debtor may exempt assets that are recovered by a trustee using his avoiding powers, but only if "such transfer was not a voluntary transfer of such property by the debtor . . . .").  Of course, Trustee's reasoning is of no moment to the resolution of the issues in this action.

MEMORANDUM OF DECISION - 5

*Hopkins v. Wells Fargo Bank Nw. (In re Arkoosh Produce, Inc.)*, 02.3 I.B.C.R. 135, 136 (Bankr. D. Idaho 2002).

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)). The Court does not weigh evidence in resolving such motions; rather it determines only whether a material factual dispute remains for trial. *Lane*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992). The initial burden of showing that there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140

MEMORANDUM OF DECISION - 6

F.3d 850, 852 (9th Cir. 1998)).  If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

II.

To avoid a preferential transfer made by a debtor prior to bankruptcy, the trustee must prove that a transfer of the debtor's property was made:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if –
>> (A) the case were a case under chapter 7 of this title;

MEMORANDUM OF DECISION - 7

> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). A trustee bears the burden of proving each element of a preference under § 547(b). 11 U.S.C. § 547(g); *Murphy v. McNelis (In re Tytan Motors, Inc.)*, 02.4 I.B.C.R. 171, 173 (Bankr. D. Idaho 2002).

### A.

While the material facts are undisputed, the parties contest the legal characterization to be given those facts. In particular, Trustee and Defendant disagree with respect to whether the $5,000 payment was made by Debtors to Defendant for or on account of an antecedent debt of Debtors.

The Bankruptcy Code does not define the term "antecedent debt." However, several courts have held that whether a debt is antecedent depends upon the temporal relationship between the date the debt was incurred and the date of the alleged preferential transfer. *See, e.g., Peltz v. Edward C. Vancil, Inc. (In re Bridge Info. Sys., Inc.)*, 474 F.3d 1063, 1066-67

MEMORANDUM OF DECISION - 8

(8th Cir. 2007); *Southmark Corp. v. Marley (In re Southmark Corp*.), 62 F.3d 104, 106 (5th Cir. 1995); *Energy Coop. Inc. v. Socap Int'l, Ltd. (In re Energy Coop., Inc.)*, 832 F.2d 997, 1001 (7th Cir. 1987); *Upstairs Gallery, Inc. v. Macklowe W. Dev. Co., L.P. (In re Upstairs Gallery, Inc.)*, 167 B.R. 915, 918 (9th Cir. B.A.P. 1994); *Midwest Holding #7, LLC v. Anderson*, 387 B.R. 892, 895 (Bankr. N.D. Georgia 2008); *Hopkins v. Nord (In re Kent)*, 04.3 I.B.C.R. 113, 114 (Bankr. D. Idaho 2004); *AERFI Group PLC v. Barstow (In re MarkAir, Inc.)*, 240 B.R. 581 (Bankr. D. Alaska 1999); *Fisher v. New York City Dep't. Of Hous. Pres. and Dev. (In re Pan Trading Corp.)*, 125 B.R. 869, 875 (Bankr. S.D.N.Y. 1991). In other words, a debt is antecedent for preference purposes if it was incurred prior to the transfer.

Under the lease agreement, it is clear that Debtors agreed to pay Defendant $1,000 each month for the entire one-year term of the lease. What is not so apparent to Defendant, however, is whether the debt created by the lease was incurred by Debtors at the time the lease was signed, or as the individual monthly rental payments became due. Citing *Nolden v. Van Dyke Seed Co., Inc. (In re Gold Coast Seed Co.)*, 751 F.2d 1118

MEMORANDUM OF DECISION - 9

(9th Cir. 1985), Defendant urges that the latter interpretation is correct, because in *Gold Coast*, the Ninth Circuit explained that "a debt is incurred when the debtor first becomes legally bound to pay." *Id.* at 1119. Defendant argues that Debtors were not legally bound to pay him until each monthly rental obligations became due. Since Debtors were current on their rental payments at the time, Defendant insists that the $5,000 "advance" payment was not on account of an antecedent debt.

Not surprisingly, Trustee interprets *Gold Coast* differently. He contends that Debtors became legally bound to pay the debt at the time they entered the lease with Defendant, thus making the debt antecedent to the $5,000 payment. Trustee asserts that the installment nature of Debtors' rental payments does not alter the antecedent status of the debt. Based on its review of the case law[7], the Court agrees with Trustee.

---

[7] To be precise, *Gold Coast* does not deal with a debtor's monthly payment obligation under a lease agreement. That decision examined a futures contract, *i.e.*, a contract to purchase and sell goods at a future date at a fixed price. As such, *Gold Coast* is factually distinguishable from the case at bar. And while several courts have addressed the antecedent debt issue in the general context of lease agreements, none have dealt with a fact pattern similar to the one at bar, where the payment in question was intended by the parties to be applied to

MEMORANDUM OF DECISION - 10

Essentially, Defendant argues that a debt is not incurred until it is "legally collectible." *See Midwest Holding*, 387 B.R. at 895. Like the court in *Midwest Holding*, this Court respectfully rejects that argument.

When Debtors executed the lease agreement, they immediately became obligated to "LEASE the premises for a minimum term of 12 months" beginning in January 2008 and expiring in January 2009. Adv. Docket No. 8, Attachment A. Under this provision, Debtors were granted a contractual right to occupy the leased premises for a full year. By the same token, they had a corresponding duty to make monthly rental payments to Defendant during that time. That Defendant agreed to allow Defendants to pay the rent in installments on the first day of each month merely rendered the debt created by the lease "unmatured." *Id.* An unmatured debt, however, is nonetheless a debt for purposes of the Bankruptcy Code.

---

future rent. *See, e.g., Upstairs Gallery*, 167 B.R. 915 (dealing with payments made pursuant to a lease termination agreement); *Midwest Holding*, 387 B.R. 892 (same); *MarkAir*, 240 B.R. 581 (same). Though these decisions can be factually distinguished as well, the reasoning employed by these courts informs the Court's analysis and conclusion in this matter.

MEMORANDUM OF DECISION - 11

Trustee likens Debtors' lease to a typical installment purchase contract,[8] noting that, "a debtor generally becomes legally obligated on [an installment contract] on the date when the debtor originally undertook the obligation, not when each payment comes due." *Pan Trading*, 125 B.R. at 875. While this analogy is instructive, it is not without flaws. Indeed, the decision which Trustee cites to support his argument notes that several courts have treated rental payments differently than periodic payments on other types of long-term debt. *Id.* at 876, *citing Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631 (10th Cir. 1986); *Armstrong v. Gen. Growth Dev. Corp. (In re Clothes, Inc.)*, 35 B.R. 489 (Bankr. D.N.D. 1983); *Carmack v. Zell (In re Mindy's Inc.)*, 17 B.R. 177 (Bankr. S.D. Ohio 1982).

But this Court is not persuaded by these other cases.[9] The *Pan Trading* court recognized that one important reason why rental agreements

---

[8] For example, a buyer's contract to purchase an auto where the seller agrees to accept some or all of the purchase price in monthly installments.

[9] In declining to follow the reasoning in these several cases, the Court is not alone. *See MarkAir*, 240 B.R. 581. There, in a lengthy and well-reasoned opinion, the bankruptcy court discussed, and then dismissed each of the cited cases as well as several others.

MEMORANDUM OF DECISION - 12

should be treated differently than other forms of long-term debt is the contemporaneous manner in which money and services are exchanged. 125 B.R. at 876. Under an installment sale contract, the purchaser receives the goods, while in the case of a lease, theoretically, one monthly payment is exchanged for one month of possession by the tenant. But that logic does not translate easily, because in this case Debtors were not month-to-month renters with each new month essentially creating a new lease obligation. They were year-long tenants, and their $5,000 "advance" rental prepayment to Defendant did not give them a right to occupy the property for an additional five months. Instead, that payment merely reduced their outstanding liability under their lease to make a total of twelve payments of $1,000 each.

Under these facts, the Court concludes that the debt was incurred when Debtors entered the lease, not when the monthly payments later became due. Since this debt was incurred prior to the time the $5,000 payment was made by Debtors to Defendant, and pursuant to the lease terms that payment was to be credited to Debtors total rental obligations,

MEMORANDUM OF DECISION - 13

this payment was a transfer made for or on account of an antecedent debt.

A contrary result would run the risk of creating a rental prepayment loophole from preference liability allowing landlords more protection under the Bankruptcy Code from preference liability than other similarly-situated creditors.

B.

Defendant has not explicitly acknowledged that Trustee has satisfied his burden with respect to the other elements of § 547(b). However, at the hearing, Defendant made no argument that, but for the "antecedent debt" issue, any material facts were in dispute or other legal issues must be resolved. And while Defendant's concise memorandum is silent with respect to the other elements of § 547(b), prudence compels the Court to briefly address them.

A preference is a transfer made to or for the benefit of a creditor. *See* 11 U.S.C. § 547(b)(1). The Code defines a creditor as an entity with a claim against the debtor that arose at the time of or before the order for relief. 11 U.S.C. § 101(10). When Debtors entered into the one-year lease with

MEMORANDUM OF DECISION - 14

Defendant on January 4, 2008, Defendant became a creditor of the Debtors. Since the $5,000 payment was made directly to Defendant, § 547(b)(1) is clearly satisfied.

An avoidable preference is a transfer made while the debtor is insolvent, and that transfer must be made on or within ninety days before the filing of the petition. *See* 11 U.S.C. §§ 547(b)(3) & (4). With respect to these elements, it is unclear exactly when the $5,000 payment was made by Debtors to Defendant. However, both parties agree that the payment was made sometime between the time Debtors filed their 2007 tax returns in late January 2008, and the time the bankruptcy petition was filed on February 26, 2008. Since these parameters create a mere a 30-day prebankruptcy window, logic dictates that the target transfer was made within 90 days of the filing of the petition, satisfying § 547(b)(4).

Moreover, a debtor is presumed to be insolvent during the 90 days immediately preceding the filing of the petition. *See* 11 U.S.C. § 547(f). Defendant presented no evidence to rebut this presumption, thus § 547(b)(3) is also satisfied.

MEMORANDUM OF DECISION - 15

Lastly, a preference is a transfer that enables a creditor to receive more than it would have received in chapter 7 had the transfer not been made. *See* 11 U.S.C. § 547(b)(5). A quick review of Debtors' schedules reveals that their liabilities greatly eclipse the value of any assets available for distribution, meaning unsecured creditors will more likely than not receive a small pro rata dividend on their total claims. Defendant's claim against Debtors under the lease is an unsecured claim. Thus, if Defendant is allowed to retain the $5,000 payment, he would receive more that he would in the chapter 7 case had the transfer not been made.

The Court concludes that Trustee has shown, by undisputed fact, that all requirements for a preference under § 547(b) are satisfied.[10]

## Conclusion

---

[10] Of course, even if all § 547(b) elements are proven by a trustee, the Code offers the transferee a variety of defenses to preference liability under § 547(c). However, Defendant has asserted none of these defenses in this action, and would bear the burden of proving facts sufficient to sustain any defense. 11 U.S.C. § 547(g) (providing that "the party against whom recovery is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of [§ 547].").

MEMORANDUM OF DECISION - 16

The Court concludes that Trustee is entitled to a summary judgment on his preference claim,[11] and that he may avoid the $5,000 payment to Defendant. A separate order will be entered. Trustee shall submit an appropriate form of judgment for entry by the Court.

Dated: September 12, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[11] Trustee's complaint alleges, in the alternative, that the $5,000 advance rent payment from Debtors to Defendant constituted an unauthorized post-petition transfer under § 549(a). In his motion to dismiss, Defendant argues that Trustee cannot recover under this theory because he has conceded that the target transfer occurred pre-petition. At the hearing, Trustee agreed to the entry of an order dismissing this portion of his complaint. Accordingly, Trustee's claim against Defendant under § 549(a) will be dismissed.

MEMORANDUM OF DECISION - 17